**U.S. DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**Western Division**

| | |
|---|---|
| **SHIRLEY PARROTT-COPUS,** | |
| **Plaintiff,** | |
| **v.** | **COMPLAINT** |
| **TERRA STATE COMMUNITY COLLEGE** | **Case No. _____** |
| **Defendant.** | **JURY TRIAL DEMAND** |

## I.      NATURE OF THE ACTION

1.       Plaintiff Shirley Parrott-Copus brings this action against Defendant Terra State Community College ("College") alleging that the College violated and remains in violation of the federal Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq*. ("ADA"), the federal Rehabilitation Act, 29 U.S.C. § 794, and Ohio Revised Code Section 4112.022. Specifically, Ms. Parrott-Copus alleges that after earning admission to the College's Licensed Practical Nurse to Registered Nurse Degree Program ("LPN to RN Degree Program" or "Program"), the College rescinded her admission on the basis of disability, failed to provide the auxiliary aids and services necessary for effective communication, failed to make reasonable modifications, and retaliated against her for requesting such auxiliary aids and services.

1

2.	Ms. Parrott-Copus is a licensed practical nurse ("LPN") with a profound sensorineural hearing loss who has successfully worked as a licensed practical nurse caring for psychiatric patients for almost fifteen years.

3.	In 2013, Ms. Parrott-Copus enrolled at the College to pursue a Registered Nurse ("RN") degree. In addition to certain prerequisites, the LPN to RN Degree Program consists of three semesters of coursework.

4.	In the Fall of 2014, following successful completion of three semesters of prerequisite coursework at the College, Ms. Parrott-Copus earned admission to the College's LPN to RN Degree Program.

5.	In January 2015, approximately three weeks into the Program, the director of the College's nursing school told Ms. Parrott-Copus that in order to remain enrolled in the Program, Ms. Parrott-Copus would have to demonstrate her ability to hear and acknowledge verbal instructions and recognize changes in equipment sounds.

6.	Because of her hearing disability, Ms. Parrott-Copus requires auxiliary aids and/or services in order to perform these tasks. She accordingly requested that the College provide auxiliary aids and services that would allow her an equal opportunity to participate meaningfully in the Program, notwithstanding her disability.

7.	The nursing school director rejected each of Ms. Parrott-Copus's requests and refused to engage in any further conversation about whether Ms. Parrott-Copus could participate in the Program with auxiliary aids and services or reasonable modifications.

8.	On February 5, 2015, the day after Ms. Parrott-Copus tried to engage in discussions about auxiliary aids and services, the nursing school director informed Ms. Parrott-Copus that the College was dismissing her from the Program because of her hearing disability.

2

9.      The College's decision to dismiss Ms. Parrott-Copus from the LPN to RN Degree Program because of her disability constitutes unlawful discrimination, denial of auxiliary aids and services, denial of reasonable modifications, and retaliation for exercising her federally protected rights, in violation of Title II of the ADA, 42 U.S.C. § 12131 *et seq*.; the Rehabilitation Act, 29 U.S.C. § 794; and Ohio Revised Code Section 4112.022.

10.      Through this action, Ms. Parrott-Copus seeks such declaratory and injunctive relief that will ensure that the College complies with all federal and state laws that protect students from discrimination based on disability; an order directing the College to re-admit her into the LPN to RN Degree Program with such auxiliary aids and services and reasonable modifications as are necessary for her to fulfill her dream of becoming a registered nurse; compensatory damages including damages for her out-of-pocket losses and the pain, humiliation, and anxiety caused by the College's unlawful conduct; and attorneys' fees and costs.

## II.      JURISDICTION

11.      The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343; 29 U.S.C. § 794a; and 42 U.S.C. § 12133.

12.      This Court has supplemental jurisdiction over Plaintiff's related claim under Ohio Revised Code Section 4112.022 pursuant to 28 U.S.C. § 1367(a) because that claim derives from a common nucleus of operative fact as Plaintiff's federal causes of action. Plaintiff's federal and state law claims all challenge Defendant's discriminatory and retaliatory dismissal of Plaintiff from its LPN to RN Degree Program because of Plaintiff's disability.

13.      Venue is proper in this District and Division under 28 U.S.C. §§ 115 and 1391(b)(2) because Plaintiff's claims arose in Sandusky County. Venue is also proper under 28 U.S.C. § 1391(b)(3) because Defendant is subject to this Court's personal jurisdiction.

### III.     PARTIES

14.     Plaintiff Shirley Parrott-Copus is a natural person who resides in Sycamore, Ohio.

15.     Defendant Terra State Community College ("College") is a community college authorized by the State of Ohio under Title 33, Chapter 3358 of the Ohio Revised Code, with a campus located in Fremont, Ohio.

16.     During the time period relevant to this action, the College has received federal financial assistance from, *inter alia*, the U.S. Department of Education.

### IV.     FACTUAL ALLEGATIONS

17.     Ms. Parrott-Copus has profound bilateral sensorineural hearing loss that substantially limits major life activities including hearing.

18.     In 2001, Ms. Parrott-Copus successfully obtained her LPN degree from Southern Ohio College, now Brown Mackie College. Shortly after passing her boards, she obtained employment as an LPN.

19.     Ms. Parrott-Copus has worked as an LPN for almost fifteen years, primarily caring for psychiatric patients.

20.     Ms. Parrott-Copus is passionate about her job and her patients and is good at what she does. Her hearing disability has never interfered with her nursing career or her ability to care for her patients.

21.     Ms. Parrott-Copus has long desired to further her nursing education by pursuing a RN degree.

22.     The College is the only school located near Ms. Parrott-Copus's home that offers an affordable, three-semester LPN to RN Degree Program.

23.     In the fall of 2013, Ms. Parrott-Copus enrolled at the College to begin three semesters of prerequisites in order to be eligible for the College's LPN to RN Degree Program.

24.     Prior to the first semester, Ms. Parrott-Copus took out educational loans to finance the prerequisite courses for her advanced nursing degree.

25.     Ms. Parrott-Copus completed the three semesters of prerequisites with a strong academic record and applied for competitive admission to the LPN to RN Degree Program. Based on that strong academic record, letters of reference, and her interview performance, Ms. Parrott-Copus earned admission to the College's LPN to RN Degree Program beginning in the Spring 2015 semester.

26.     Ms. Parrott-Copus took out educational loans and registered for classes in the LPN to RN Degree Program.

27.     The College's Office of Disability Services created a plan that provided for Ms. Parrott-Copus to receive study guides, audio recordings of lectures, and captioning for videos while enrolled in the LPN to RN Degree Program.

28.     The College informed Ms. Parrott-Copus that she could ask a classmate to provide her with notes, at Ms. Parrott-Copus's own expense, as an additional accommodation for her hearing disability.

29.     Ms. Parrott-Copus's professors did not provide study guides, however. In addition, most professors relied heavily on videos for classroom instruction, and the videos were frequently narrated by an off-screen narrator without closed-captioning, making it impossible for Ms. Parrott-Copus to access the video content, on which students were tested.

30.     Ms. Parrott-Copus approached two professors to discuss her inability to understand videos without captioning and her need for auxiliary aids and services.

31.     One professor responded sarcastically by asking whether in a work setting Ms. Parrott-Copus demanded that her patients turn on closed-captioning.

32.     Another professor told Ms. Parrott-Copus to just "do her best" on the upcoming test of content delivered via a video without captioning and said she would speak to the nursing school director about the issue.

33.     Shortly after these interactions with Ms. Parrott-Copus's professors, the director of the College's nursing school, Assistant Professor Susan Kajfasz, requested a meeting with Ms. Parrott-Copus.

34.     Ms. Parrott-Copus believed that the purpose of the meeting Professor Kajfasz requested was to discuss Ms. Parrott-Copus's need for auxiliary aids and services and her professors' refusal to provide them. Instead, Professor Kajfasz informed Ms. Parrott-Copus that she had until February 6, 2015, to produce documentation proving that she could hear or face dismissal from the LPN to RN Degree Program.

35.     The College documented this threat in a letter from Professor Kajfasz dated January 26, 2015, stating, "It has come to my attention that you may not meet the Health requirements for the nursing program as outline [sic] in Policy 2.8 of the student handbook." The letter directed Ms. Parrott-Copus to provide an audiology report, at her own expense, that "substantiat[ed]" her ability to "hear and acknowledge verbal instructions", "[r]ecognize changes in equipment sounds", and "[p]erform auscultation with or without assistive devices."

36.     After receiving this letter, Ms. Parrott-Copus returned to Professor Kajfasz's office to explain that she had successfully worked as an LPN with profound hearing loss for nearly fifteen years and that she could satisfy all the program requirements and succeed in the LPN to RN Degree Program with auxiliary aids and services.

37.     Ms. Parrott-Copus conveyed to Professor Kajfasz that for clinical coursework and future clinical placements, auxiliary aids and services are necessary for her to follow a professor's instruction in a setting with background noise and where the professor might not be facing her.

38.     Auxiliary aids and services are also necessary to provide visual or other non-auditory signals for changes in monitors and other equipment.

39.     Ms. Parrott-Copus owns a stethoscope equipped with a microphone that allows her to perform the third criterion in Policy 2.8, auscultation.

40.     Professor Kajfasz responded that Ms. Parrott-Copus would be dismissed from the nursing program unless she could provide proof from an audiologist that she could perform the three abilities in Policy 2.8 *without* accommodations and refused to engage in any discussion of auxiliary aids or services that would afford Ms. Parrott-Copus equal access to the clinical program.

41.     Professor Kajfasz stated that in her view, no accommodations would be reasonable, that the minimal accommodations Ms. Parrott-Copus had were already too extensive, and that it would be unsafe and inappropriate to allow a hearing-impaired individual to practice nursing in any setting.

42.     Professor Kajfasz's discriminatory opinion is contrary to that of highly regarded nursing programs that have granted RN degrees to profoundly deaf students and of state licensing boards that grant RNs to profoundly deaf nurses.

43.     Ms. Parrott-Copus completed the audiologist examination on February 4, 2015. The audiologist report assessed Ms. Parrott-Copus, diagnosed her with profound bilateral sensorineural hearing loss, and reported that she would "experience difficulty hearing verbal

instructions, especially when in the presence of background noise, when visual cues are not available, and when listening at a distance," in other words in the conditions that characterize a clinical setting, and that she "may have difficulty hearing equipment noises, especially if the alert tones fall in the range from 1,000 – 8,000 Hz. *Assistive devices and accommodations for communication would help improve [her] ability to perform tasks*." (Emphasis added.)

44.     On February 5, 2015, Ms. Parrott-Copus met with the Dean of Students and Professor Kajfasz to discuss the results of the audiologist report. Ms. Parrott-Copus again requested that the College consider her ability to satisfy the "sensory ability" policy with auxiliary aids and services.

45.     Ms. Parrott-Copus proposed possible auxiliary aids and services that would allow her to satisfy the "sensory ability" requirements, but Professor Kajfasz refused to discuss auxiliary aids and services, immediately dismissing each proposal that Ms. Parrott-Copus raised; reiterated her view that it was unsafe for a hearing-impaired individual to practice nursing in any setting; and questioned the Ohio's licensing board's decision to license Ms. Parrott-Copus as an LPN, a job she had been performing successfully for almost fifteen years.

46.     Believing that any further discussion at that point would be futile, Ms. Parrott-Copus asked Professor Kajfasz to review certain websites that document the accomplishments of hard of hearing and profoundly deaf nurses, and then to continue the conversation about auxiliary aids and services that would afford Ms. Parrott-Copus an equal opportunity to access and participate in the LPN to RN Degree Program's clinical courses.

47.     Auxiliary aids and services that would enable Ms. Parrott-Copus to participate meaningfully in the LPN to RN Degree Program's classroom and clinical components include but are not limited to a vibrating pager with a digital display to notify her of equipment monitor

8

changes, an oral interpreter for clinical placements, closed-captioning or open-captioning whenever videos are played in class, Communication Access Realtime Translation ("CART"), and a note-taker assigned by the College, at the College's expense.

48.     But instead of engaging in any further interactive process concerning auxiliary aids and services, on the very next day Professor Kajfasz informed Ms. Parrott-Copus that the College was dismissing Ms. Parrott-Copus from the Program, effective immediately. The dismissal was confirmed in a letter sent on the same day.

49.     Terra's President and Dean of Students were both aware of Ms. Parrott-Copus's dismissal and Professor Kajfasz's refusal to engage in any discussion of auxiliary aids and services that would allow Ms. Parrott-Copus to have equal access to the College's LPN to RN Degree Program.

## V.     INJURY TO PLAINTIFF

50.     As a result of the College's conduct, Ms. Parrott-Copus has suffered, and will continue to suffer, irreparable loss and injury, including but not limited to economic loss, humiliation, embarrassment, mental and emotional distress, and deprivation of her civil rights.

51.     Ms. Parrott-Copus has experienced emotional distress as a result of her dismissal and the humiliating and hostile comments of nursing school professors and administrators.

52.     Ms. Parrott-Copus's future job prospects have been diminished by her dismissal from the College's LPN to RN Degree Program.

53.     Because RNs earn higher wages than LPNs, the College's dismissal of Ms. Parrott-Copus from the LPN to RN Degree Program has reduced her future earning potential. Ms. Parrott-Copus also lost income from the time period during which she was enrolled in the LPN to RN Degree Program and has incurred student loan debt.

9

## VI.   CAUSES OF ACTION

**First Cause of Action: Discrimination Under Title II of the Americans with Disabilities Act
42 U.S.C. § 12132**

54.     Plaintiff incorporates by reference the allegations in Paragraphs 1-53 above, as if set forth herein.

55.     Plaintiff has a hearing disability that substantially limits major life activities including hearing.

56.     Plaintiff is an individual with a disability.

57.     Defendant was aware of Plaintiff's disability.

58.     Plaintiff is otherwise qualified for participation in Defendant's LPN to RN Degree Program, with or without accommodations.

59.     Defendant is a state-supported community college and is therefore a public entity within the meaning of 42 U.S.C. § 12131.

60.     Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

61.     Defendant excluded Plaintiff from participation in its LPN to RN Degree Program because of Plaintiff's disability, in violation of 42 U.S.C. § 12132 and 28 C.F.R. § 35.130(a), (b)(1)(i).

62.     Pursuant to the ADA's implementing regulations, "[a] public entity shall take appropriate steps to ensure that communication with applicants, participants . . . with disabilities are as effective as communications with others." 28 C.F.R. § 35.160(a).

63.     Auxiliary aids and services include qualified interpreters, notetakers, real-time computer-aided transcription services, written materials, open and closed captioning, or other effective methods of making aurally delivered information available to individuals who are deaf or hard of hearing. 28 C.F.R. § 35.104.

64.     Pursuant to implementing regulations, "[a] public entity shall not impose or apply eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any service, program, or activity, unless such criteria can be shown to be necessary for the provision of the service, program, or activity being offered." 28 C.F.R. §35.130(b)(8).

65.     Defendant failed to provide the auxiliary aids and services that would afford Plaintiff equal access to Defendant's LPN to RN Degree Program, in violation of 42 U.S.C. § 12132.

66.     Defendant refused to engage in any interactive process concerning auxiliary aids and services, in violation of 42 U.S.C. § 12132.

67.     Defendant knew that Plaintiff was seeking auxiliary aids and services from the College.

68.     Defendant chose to dismiss Plaintiff from the Program knowing she had requested auxiliary aids and services.

69.     Defendant chose to dismiss Plaintiff from the Program knowing she had asserted rights pursuant to the ADA.

70.     Defendant's violations were intentional.

71.     As a result of Defendant's violations, Plaintiff has suffered and will continue to suffer harm.

## Second Cause of Action: Retaliation Under the ADA
### 42 U.S.C. § 12203

72.     Plaintiff incorporates by reference the allegations in Paragraphs 1-71 above, as if set forth herein.

73.     Plaintiff engaged in activity that is protected under the ADA by requesting that Defendant College engage in an interactive process concerning her requests for auxiliary aids and services and reasonable modifications that would allow her to participate meaningfully in the LPN to RN Degree Program's clinical component, and that it provide such auxiliary aids and services.

74.     Defendant was aware of Plaintiff's protected activity.

75.     Defendant dismissed Plaintiff from its LPN to RN Nursing Degree program because of Plaintiff's protected activity.

76.     Defendant's actions constitute unlawful retaliation, in violation of 42 U.S.C. § 12203(a).

77.     Defendant's violations were intentional.

78.     As a result of Defendant's violations, Plaintiff has suffered and will continue to suffer harm.

## Third Cause of Action: Discrimination Under the Rehabilitation Act
### 29 U.S.C. § 794

79.     Plaintiff incorporates by reference the allegations in Paragraphs 1-78 above, as if set forth herein.

80.     Plaintiff has a hearing disability that substantially limits major life activities including hearing.

81.     Plaintiff is an individual with a disability.

12

82.     Defendant was aware of Plaintiff's disability.

83.     Plaintiff is otherwise qualified for participation in Defendant's LPN to RN Degree Program, with or without accommodations.

84.     During the relevant time period, Defendant received Federal financial assistance from, *inter alia*, the U.S. Department of Education.

85.     Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794.

86.     Defendant has excluded Plaintiff from participation in its LPN to RN Degree Program solely because of Plaintiff's disability, in violation of 29 U.S.C. § 794.

87.     Defendant furthermore denied Plaintiff's requests for auxiliary aids and services and reasonable modifications that would afford her equal access to Defendant's LPN to RN Degree Program and refused to engage in any interactive process regarding auxiliary aids and services, in violation of 29 U.S.C. § 794.

88.     Defendant's violations were intentional.

89.     As a result of Defendant's violations, Plaintiff has suffered and will continue to suffer harm.

### Fourth Cause of Action: Retaliation Under the Rehabilitation Act
### 29 U.S.C. § 794

90.     Plaintiff incorporates by reference the allegations in Paragraphs 1-89 above, as if set forth herein.

91.     Defendant receives Federal financial assistance from, *inter alia*, the U.S. Department of Education.

92.     Plaintiff engaged in activity that is protected under the Rehabilitation Act by requesting that Defendant engage in an interactive process concerning her requests for auxiliary aids and services and modifications that would allow her to participate meaningfully in Defendant's LPN to RN Degree Program.

93.     Defendant was aware of Plaintiff's protected activity.

94.     Defendant subjected Plaintiff to dismissal from its LPN to RN Degree Program because of Plaintiff's protected activity.

95.     Defendant's actions constitute unlawful retaliation, in violation of 29 U.S.C. § 794 and 34 C.F.R. § 100.7(e).

96.     Defendant's violations were intentional.

97.     As a result of Defendant's violations, Plaintiff has suffered and will continue to suffer harm.

### Fifth Cause of Action: Disability Discrimination by an Educational Institution
### Ohio Revised Code § 4112.022; Ohio Admin. Code 4112-5-09

98.     Plaintiff incorporates by reference the allegations in Paragraphs 1-97 above, as if set forth herein.

99.     Plaintiff has a hearing disability that substantially limits major life activities, including hearing, and Defendant was aware of that disability.

100.    Plaintiff is otherwise qualified for participation in Defendant's LPN to RN Degree Program, with or without accommodations.

101.    Defendant is a state college.

102.    Defendant has discriminated against Plaintiff by rescinding her admission to its LPN to RN Degree Program on account of Plaintiff's hearing disability, in violation of Ohio Revised Code Section 4122.022.

103.    Defendant furthermore denied Plaintiff's requests for auxiliary aids and services that would afford her equal access to Defendant's LPN to RN Degree Program and refused to engage in any interactive process, in violation of Ohio Revised Code Section 4112.022 and Ohio Administrative Code 4112-5-09(C) and (D).

104.    Defendant furthermore refused to make modifications to its LPN to RN Degree Program requirements that were necessary to ensure those requirements did not discriminatorily deny Ms. Parrott-Copus access to the Program because of her disability, in violation of Ohio Revised Code Section 4112.022 and Ohio Administrative Code 4112-5-09(D).

105.    Defendant acted with actual malice by consciously disregarding Plaintiff's rights to equal treatment notwithstanding her disability and causing Plaintiff substantial harm.

106.    As a result of Defendant's violations, Ms. Parrott-Copus has suffered and will continue to suffer emotional harm.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court:

A.  Declare that Defendant's actions violate the ADA, the Rehabilitation Act, and Ohio Revised Code Section 4112.022;

B.  Declare that Defendant acted with actual malice by engaging in conduct that violated Plaintiff's rights under Ohio Revised Code Section 4112.022;

C.  Enjoin Defendant and its directors, officers, agents, and employees from engaging in the discriminatory conduct described herein and direct them to take all affirmative

steps necessary to remedy the effects of the conduct described herein and to prevent additional instances of such conduct or similar conduct from occurring in the future;

D.  Enter a court order requiring Defendant to readmit Ms. Parrott-Copus into the Program and provide the auxiliary aids and services and reasonable modifications necessary for full and equal participation in the Program;

E.  Enter a judgment for compensatory damages to Plaintiff in an amount to be proved at trial before a jury that will fully compensate Plaintiff for the injuries alleged herein resulting from Defendant's intentionally discriminatory conduct;

F.  Enter a judgment for punitive damages to Plaintiff based on Defendant's violations of Ohio Revised Code Section 4112.022;

G.  Award Plaintiff her reasonable attorneys' fees and costs, pursuant to 29 U.S.C. § 794a; 42 U.S.C. § 12133; and Ohio Revised Code Section 4112.99; and

H.  Grant all such other relief as it deems just and equitable.

## JURY DEMAND

Plaintiff requests a jury trial on all claims so triable.

Dated: August 31, 2015

Respectfully submitted,

/s/ Stephen M. Dane
Stephen M. Dane
RELMAN, DANE & COLFAX PLLC
312 Louisiana Avenue
Perrysburg, OH 43551
Telephone: (419) 873-1814
E-mail: sdane@relmanlaw.com
OH Bar No. 0013057

Jamie Crook (admission to appear *pro hac vice* to be sought)
RELMAN, DANE & COLFAX PLLC
1225 19th Street, NW
Suite 600
Washington, DC 20036
Telephone: (202) 728-1888
Fax: (202) 728-0848
E-mail: jcrook@relmanlaw.com

Michael Stein (admission to appear *pro hac vice* to be sought)
Mary C. Vargas (admission to appear *pro hac vice* to be sought)
STEIN & VARGAS, LLP
5100 Buckeystown Pike, Suite 250
Frederick, MD 21704
Telephone: (240) 793-3185
Fax: (888) 778-4620
E-mail: michael.stein@steinvargas.com; mary.vargas@steinvargas.com

Debra J. Patkin (admission to appear *pro hac vice* to be sought)
NATIONAL ASSOCIATION OF THE DEAF
8630 Fenton Street, Suite 820
Silver Spring, MD 20910
Telephone: (301) 587-1788
Fax: (301) 587-1791
E-mail: debra.patkin@nad.org

*Counsel for Plaintiff*